UNITED STATES

v.

**Airman First Class William E. SCHROCK, FR 537–68–2213 United States Air Force.**

**ACM S25167.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 Dec. 1980.

Decided 7 July 1981.

---

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Douglas H. Kohrt.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before ARROWOOD, MAHONEY and MILLER, Appellate Military Judges.

## DECISION

MAHONEY, Judge:

Two of the three assigned errors concern the post-trial review of the staff judge advocate:

### I

THE STAFF JUDGE ADVOCATE ERRED BY INCLUDING IN HIS POST–TRIAL REVIEW, INFORMATION THAT THE ACCUSED USED DRUGS WHILE ENROLLED IN THE DRUG REHABILITATION PROGRAM.

### II

THE REVIEWER'S FAILURE TO INFORM THE SUPERVISORY AUTHORITY OF HIS OPTION TO SUSPEND THE BAD CONDUCT DISCHARGE CONSTITUTES ERROR.

Against these assigned errors we juxtapose the entire *Goode* response of the trial defense counsel:

1. I have reviewed the record of trial, Staff Judge Advocate's post trial review and clemency documents in the special court-martial of Airman Basic William E. Schrock.

2. The defense objects to all incomplete, misleading, erroneous, and prejudicial matters addressed or omitted in the record of trial, post trial review and clemency evaluations.

The stated purpose of the rule established in *United States v. Goode*, 23 U.S. C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), was to diminish the "continual and often repeated claims of error [in the staff judge advocate's review] plus the delay in determining their validity and correction . . . ." The rule requires that "a copy of the writ-

ten review required by Article 61 or 65(b), U.C.M.J., 10 U.S.C. § 861 or 865(b), be served upon counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate, or misleading, or on which he otherwise wishes to comment." In the furtherance of the purpose of the rule, this Court has extended it to require that "when the defense counsel submits comments or challenges to the review of the staff judge advocate . . ., the staff judge advocate must, at a minimum, indicate his concurrence or disagreement with those comments prior to submitting them to the officer exercising general court-martial authority." *United States v. Boston*, 7 M.J. 954, 955 (A.F.C.M.R. recon.1979). The consequence of a failure by the defense counsel to make timely or specific comments upon review errors is normally a waiver. *United States v. Goode, supra.*

■ In this case, the trial defense counsel's boiler-plate objection, while seeking to preserve every possible error, preserved none. Such lack of specificity misses the point of *Goode*, and fails even to trigger a duty to comment under *Boston*. Moreover, defense counsel failed to distinguish between review errors and trial errors. To preserve review errors for appellate review, trial defense counsel should specifically and succinctly identity them in the *Goode* response.[1] The failure to do so in this case, and to thus afford the staff judge advocate the opportunity to correct the review prior to action by the convening authority, results in a waiver of the review errors assigned by appellate defense counsel.[2]

We have considered the remaining assignment of error and found it to be without merit. The approved findings of guilty

and sentence are correct in law and fact and are

AFFIRMED.

ARROWOOD, Senior Judge, concurs.

MILLER, Judge, dissenting:

Before articulating the bases of my dissent, I must detail certain facts.

In accordance with his pleas, the accused was convicted by a special court-martial, military judge alone, of transferring LSD and attempting to transfer amphetamines in violation of the Uniform Code of Military Justice, Articles 92 and 80, 10 U.S.C.A. §§ 892, 880.

No evidence of prior participation in Air Force drug rehabilitation programs was introduced at trial. Following the sentencing and prior to adjournment, the military judge announced:

> You have committed two offenses which by their very nature are extremely serious offenses. You knowingly and deliberately transferred what you thought to be dangerous drugs. My sentence reflects my concern with that. I am, however, convinced by what I have heard today that you do have some potential to be rehabilitated and that you have already shown signs of realizing yourself that you have the capacity to rehabilitate yourself. I therefore recommend to the convening authority to designate the 3320th Corrections and Rehabilitation Squadron at Lowry as the place of confinement in order to allow you the opportunity to rehabilitate yourself. In the event that the convening authority should not see fit to do that, or by some reason be prevented from doing so, I would further recommend to the conven-

---

1. Scant purpose is served in cluttering up a *Goode* response with the merits of trial errors. If trial defense counsel deems it appropriate to address trial errors, *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977), the appropriate vehicle is a post-trial brief. Article 38(c), 10 U.S.C.A. § 838(c), Uniform Code of Military Justice.

2. The issue in the first assigned error was recently resolved adversely to the defense position. *United States v. Schmenk*, 11 M.J. 803

(A.F.C.M.R.1981). Informing the convening authority that the accused had previously been unsuccessful in a drug rehabilitation program was particularly appropriate in this case, in view of the military judge's observation that, based upon the limited information available to him in the sentencing portion of the trial, the accused appeared to be a suitable candidate for rehabilitation and restoration to duty.

ing authority that he give serious consideration to a conditional suspension of the imposition of the bad conduct discharge which I have adjudged as a portion of this sentence.

Subsequent to adjournment, the accused's first sergeant, among others complied with Air Force Manual 111–1, Military Justice Guide, paragraph 7–5b, 25 August 1975, by submitting a post trial clemency evaluation concerning the accused. The first sergeant's evaluation included the following remarks:

He was entered into the Drug Rehabilitation Program in July 1979. During the program he had two positive urinalysis tests, one for Phencyclidine and the other for Phenobarbital and Phencyclidine. In July 1980 Schrock was again entered in the Drug Rehab Program (25 July 1980) as he was under investigation by AFOSI (drug activity). From July 1980 thru October 1980 he had two more positive urinalysis for Phenobarbital.

The review of the Staff Judge Advocate provided to the supervisory authority, summarized the recommendations of each evaluation and noted in particular that the first sergeant:

pointed out that the accused had been on a local drug rehabilitation program on two separate occasions and on both occasions had exhibited positive urinalysis test results for phencyclidine (known also as PCP or angel dust) and phenobarbital.

The reviewer went on to state:

I find little or no basis for recommending the exercise of clemency in this case. The offenses of which the accused was convicted are of a sufficiently serious nature to justify the sentence adjudged. In my opinion, the imposition of a bad conduct discharge accurately characterizes the accused's misconduct. In two and a half years of active duty the accused has been offered drug rehabilitation twice and on both occasions continued to use drugs while undergoing rehabilitation. The accused's continuation on active duty is completely inappropriate as is his

transfer to the 3320 CRS for rehabilitation.

As noted by the majority opinion, trial defense counsel responded with an overly broad, virtually meaningless *Goode* response[1] which objected to "all incomplete, misleading, erroneous and prejudicial matters addressed or omitted in the record of trial, post trial review and clemency evaluations."

Nevertheless, despite the *Goode* response's lack of any specific allegations of error at all, the staff judge advocate used its meaningless language as his sole justification for adding substantial new advice to his original review, via an addendum. Further, the staff judge advocate apparently reasoned that since this material was in response to an "assertion of error" in a *Goode* response, it was unnecessary to forward his additional advice to the accused for further compliance with the mandate of *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

The result was a presentation of the following "initial" advice to the convening authority without benefit of a rebuttal from the accused:

When he announced the sentence, the military judge stated that he was convinced that the accused had potential for rehabilitation and had shown signs of realizing that capacity. Accordingly, he recommended the convening authority designate the 3320th Corrections and Rehabilitation Squadron (CRS), Lowry AFB, Colorado, as the place of confinement. Alternatively, the military judge recommended the convening authority consider suspending the bad conduct discharge.

The convening authority did neither. Based upon the entire record of trial and all clemency matters, I concur with the convening authority's action. My opinions and recommendations as set forth in the post trial review remain unchanged.

At no point either in the Review of the Staff Judge Advocate, or the Addendum

---

1. I specifically and emphatically concur with the majority's views on this matter.

thereto, was the supervisory authority specifically advised that he as well as the convening authority had the authority to implement the military judge's post sentencing recommendations.

Having set forth the pertinent facts, I now embark upon the rationale which leads me to disagree with the majority's conclusions that the two assigned errors addressed by them were waived.

With regard to the first assigned error, (to wit: that the staff judge advocate erred by providing the supervisory authority information regarding the accused's participation in a drug rehabilitation program), my dissent is based on rationale I recently expressed in *United States v. Schmenk*, 11 M.J. 803 (A.F.C.M.R.1981).

In that case the accused's commander, who, as a member of the accused's drug rehabilitation committee was specifically

prohibited from divulging information concerning the program in "criminal proceedings", submitted a clemency evaluation report. The report contained the fact that the accused had participated in an Air Force drug rehabilitation program and facts regarding his continued drug abuse which had been gained as a result of the accused's participation in that program. Here, the accused's first sergeant, who, although not himself a member of the accused's drug rehabilitation committee, was by virtue of his duties and responsibilities as first sergeant undoubtedly privy to privileged information possessed by the accused's commander and duty supervisor in their confidential capacities as members of the accused's drug rehabilitation committee [2], submitted a clemency report containing information nearly identical to that in *Schmenk, supra.*

---

**2.** This unavoidable conclusion, exquisitely illustrates the reason I believe privileges, other than those specifically enumerated in the Manual, may no longer be claimed at courts-martial. Lay persons, such as commanders, to whom privileges such as the one in question most often apply, have such varied and complex duties, that they must rely on their staffs, including first sergeants, duty supervisors, and judge advocates, in defining their functions, in assisting them to make day to day decisions, and in communicating these decisions to their personnel. The duties of a first sergeant, for example, include:

\* \* \* \* \* \*

a. *Promotes welfare, morale, and health of enlisted personnel.* Insures contact with enlisted personnel through frequent visits to work, housing, and recreation areas. Advise commander on status of morale, welfare, and recreation. Counsels enlisted personnel and takes necessary action to resolve problems or complaints. Coordinates complex problems with the squadron commander, CBPO, finance office, chaplain, Social Actions, legal office, Red Cross, or other agencies as appropriate ... Visits enlisted personnel in the hospital or confinement and helps them take care of personal matters.

b. *Advises and assists the commander in maintaining discipline and standards* ... Consults with the commander and supervisors to insure that all supervisors are setting an appropriate example for their subordinates and are taking the necessary action to insure all personnel adhere to standards. Corrects conduct prejudicial to good order and discipline, particularly conduct that may reflect unfavorably upon the United States

Air Force. Coordinates and cooperates with military and civilian police authorities.

\* \* \* \* \* \*

e. *Monitors unit administration.* Supervises those administrative actions directed by the commander. Coordinates with supervisors of assigned enlisted personnel to schedule squadron functions and duties, leaves and passes, and other absences from duty. Insures timely processing of performance reports, rewards and decorations, favorable communications, promotions, demotions, classifications actions, quality control actions, and disciplinary actions.

AFR 39–1, Attachment 5.

The fact that the Drug rehabilitation program is conducted during duty hours and necessitates absences from duty, and that an Air Force regulation requires entry into a drug rehabilitation program be placed in a UIF makes it nearly inconceivable that a commander can avoid discussing the subject of an enlisted member's drug rehabilitation progress or lack thereof with his First Sergeant, regardless of regulatory privilege or supposed confidentiality.

According to the analysis of Rule 501 contained at 8 M.J. CLVIII:

.... Military law requires far more stability than civilian law. This is particularly true because of the significant number of non-lawyers involved in the military criminal legal system. Commanders, convening authorities, non-lawyer investigating officers, summary court-martial officers, or law enforcement personnel need specific guidance as to what material is privileged and what is not.

In both cases, the clemency evaluation report was provided to the convening and supervisory authorities for clemency consideration in their roles as court-martial reviewing and approval authorities.

Dissenting from the majority in *United States v. Schmenk, supra,* pp. 808–810, I expressed the following views:

(1) According to Air Force regulatory provisions, comments of the accused's commander concerning the accused's participation in an Air Force drug rehabilitation program cannot be considered by the convening authority or supervisory authority, in deciding whether or not to exercise their clemency powers under the Manual for Courts-Martial (1969) (Rev.), paragraph 88, unless the accused in writing affirmatively waives his right against such disclosure.

(2) Absent extraordinary factors, Rule of Evidence 501(a) prohibits a claim of any privilege at courts-martial other than those contained in Section V of the Military Rules of Evidence and Rules 301, 302, and 303.

(3) Even though the accused was expressly precluded by Rule 501(a) from claiming a privilege with regard to matters he divulged pursuant to an invalid regulatory privilege, the government is estopped from considering those matters because of a combination of extraordinary factors . . .

Applying these principles to this case, in which there was no written waiver, I conclude that the court-martial reviewing authorities should have been estopped from considering these matters to which the privilege, if valid, would have applied.

With regard to the second assigned error, (to wit: that the staff judge advocate's failure to inform the supervisory authority of his option to follow the recommendations of the trial judge to the convening authority constituted error), I find not only that the material from the addendum to the Review of the Staff Judge Advocate, quoted herein, was prejudicially misleading, but that the government's failure to forward this additional advice to the accused for

comment via a *Goode* response, constituted independent error.

Dealing first with the misleading nature of the additional advice, I note that rather than simply stating the trial judge's recommendations for clemency, the addendum first advised that these recommendations were made to the convening authority, then followed with, "The convening authority did neither." This combination of language could well have left the supervisory authority with the impression that, absent abuse of discretion on the part of the convening authority, he was foreclosed from further consideration or implementation of the military judge's recommendation.

Had the staff judge advocate simply omitted any reference to the judge's recommendation or, having referenced it, omitted his assertion that "The convening authority did neither," I would agree with the majority. But where, as here, the advice could reasonably be read as limiting the authority of the supervisory authority to consider proper clemency information, I believe the ambiguity must be clarified by an explicit reaffirmation of that authority.

Turning to the government's failure to comply with the *Goode* mandate, I note that had the staff judge advocate used the identical language of his Addendum in his original review, the defense would have had an opportunity to clarify it by a *Goode* response. Consequently, even lacking such a response, the issue would have been waived. Where, as here, however, the new advice was rendered to clarify a "non-existant" point purportedly arising from a meaningless and irresponsible *"Goode"* response, I believe *United States v. Goode, supra,* requires that it be forwarded to the accused for his comment prior to its consideration by the reviewing authority.

Having determined that the accused's rights were substantially prejudiced by each of these three errors resulting from the Review of the Staff Judge Advocate, I would return the record of trial to The Judge Advocate General for a new review and action by a different court-martial convening authority.