UNITED STATES

v.

**Airman First Class Eric J. SCHMENK,
FR 376–76–7392, United States
Air Force.**

**ACM S25155.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 Dec. 1980.

Decided 7 July 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Wade B. Morrison.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before ARROWOOD, MAHONEY and MILLER, Appellate Military Judges.

DECISION

MAHONEY, Judge:

Pursuant to his pleas, the accused was convicted by special court-martial, military judge alone, of three thefts of personal property, and possession of marijuana and benzphetamine, in violation of Articles 121, 134, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934, and 892. He was sentenced to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $200.00 per month for six months, and to be reduced to airman basic.

■ At trial, the prosecution attempted to introduce evidence of the accused's participation in an Air Force drug rehabilitation program for consideration in sentencing. The military judge correctly rejected this evidence. *United States v. Cruzado-Rodriguez*, 9 M.J. 908 (A.F.C.M.R.1980). No information resulting from or concerning an accused's participation in an Air Force drug rehabilitation program is admissible in

an Air Force court-martial unless a specific basis for its admission is established in accord with applicable directives. *United States v. Cottle*, 11 M.J. 572, note 6 and accompanying text (A.F.C.M.R.1981).

After trial, as a part of the clemency report attached to the review of the staff judge advocate, the accused's commander stated:

> I do not feel that Airman Schmenk has any potential for restoration. He was enrolled in the USAF Drug Rehabilitation Program but continued to use drugs. This demonstrates his lack of potential to rehabilitate.

Before the review was submitted to the supervisory authority, the defense counsel was afforded the opportunity to comment upon the review, including the added adverse information. *United States v. Goode*, 1 M.J. 3 (C.M.A.1975); *United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958). *See*, Air Force Manual 111–1, Military Justice Guide, paragraphs 7–3 through 7–6, dated 2 July 1973. Despite the lack of comment on this information in the review of the staff judge advocate, we presume that it was considered by the convening and supervisory authorities in determining the accused's rehabilitation potential, and in deciding whether further efforts at rehabilitation should be made, or whether clemency should be granted.

We have examined the applicable directives and have determined that the convening and supervisory authorities were, under the circumstances, properly permitted to consider records or other evidence of the accused's participation in the Air Force drug rehabilitation program, the objective of which is "to return all identified drug abusers to unlimited duty status, or assist them in their transition to civilian life." Air Force Regulation 30–2, Social Actions Program, paragraph 4–25a, dated 8 November 1976. Any commander in an accused's chain of command, including any convening authority duly acting on an accused's case, is authorized to review, handle, and have access to drug or alcohol treatment records, and to consider them in determining appropriate disposition of an accused's case. Air Force Regulation 30–2, Social Actions Program, Figure 4–6, paragraph IIa(5), and paragraphs 4–8e and 4–25b, dated 8 November 1976.

■ Although such records and information may not be considered at trial, *United States v. Cruzado-Rodriguez, supra*; Air Force Manual 111–1, Military Justice Guide, paragraph 5–14, dated 2 July 1973, they are properly subject to consideration by the convening and supervisory authorities in determining whether or not to mitigate the adjudged sentence, and whether or not to afford the opportunity for rehabilitation. *See, United States v. Roland*, 5 M.J. 935 (N.C.M.R.1978). *See also, United States v. Willett*, 11 M.J. 723 (A.F.C.M.R.1981); *United States v. Pells*, 46 CMR 697 (A.C.M.R.1972).

■ We have considered the assigned error and find that the accused's plea of guilty to possession of benzphetamine was provident. Although he did not know the precise identity of the drug at the time he possessed it, it is clear that the accused knew it was a proscribed substance and that he was not authorized to possess it. No more is required. The approved findings of guilty and the sentence are

AFFIRMED.

ARROWOOD, Senior Judge, concurs.

MILLER, Judge (dissenting):

After referencing an examination of applicable directives, the majority opinion seeks to assure us that these directives are consistent with historical precedent in that they allow convening and supervisory authorities to consider Air Force drug rehabilitation records when exercising their posttrial clemency function.

My brothers do this by first, stating the overall objective of the Air Force drug rehabilitation program, as contained in Air Force Regulation 30–2, Social Actions Program, dated 8 November 1976, to wit: "to return all identified drug abusers to unlimited duty status, or assist them in their

transition to civilian life." [1] They then interpret three paragraphs of AFR 30–2, Part II, Chapter 4,[2] as authorizing a court-martial reviewing authority who is duly acting on an accused's court-martial record, to review, handle, and have access to that accused's drug treatment records for the purpose of determining an appropriate clemency disposition of the case. Finally, they cite three cases which stand for the proposition that historically a court-martial reviewing authority may consider, for clemency purposes, matter from an accused's service record which was not admissible for sentencing at trial.

Having recently concurred in one of the cases cited by the majority in support of its final proposition, I certainly have no quarrel with it. Nor do I debate the legitimacy of the quoted purpose of the Air Force drug rehabilitation program, although, candidly, I fail to understand how a regulatory purpose of "assisting drug offenders in their transition to civilian life" supports the majority holding other than in the most macabre sense.

Where the majority did err, in my opinion, was in basing its decision on a one-sentence interpretation of three paragraphs extracted from AFR 30–2, Part Two, Chapter 4, without addressing the context of these paragraphs in the overall scheme of either the entire Drug Abuse Control Program or of its separate, drug rehabilitation [3] and confidentiality of records [4], components.

As this Court indicated in *United States v. Cottle*, 11 M.J. 572 (A.F.C.M.R.1981), it is impossible to understand the nature of the privilege extended by, or the confidential nature of, the Air Force drug rehabilitation program without benefit of an overview that can be provided only by a careful and detailed reading of:

   a. Public Health Service, Confidentiality of Alcohol and Drug Abuse Patient Records, 42 C.F.R. §§ 2.1—2.67–1 (1978)

   b. Air Force Regulation 30–2, Social Actions Programs, Figure 4–6, 8 November 1976.

   c. Air Force Manual 111–1, Military Justice Guide, paragraph 5–14, 25 August 1975.

When so read, I remain convinced that . . . conjunctively, the general effect of these regulations is to prohibit anyone, other than the accused, from introducing, in *criminal proceedings*, any information about, or gained as a result of, his participation in an Air Force drug rehabilitation program. The result is an extraordinarily broad evidentiary exclusionary privilege that is automatically invoked on behalf of the accused, unless he specifically directs otherwise. [emphasis added, footnotes omitted]

*United States v. Cottle, supra*, p. 574

In my opinion the majority has mistakenly relied upon AFR 30–2, Part II, Chapter 4, Section G, paragraph 4–25 to support its contention that a reviewing authority may consider otherwise confidential and privileged matters during his consideration of clemency appropriateness. Such a reliance implies that AFR 30–2, Part II, Chapter 4, Section G, Paragraphs 4–25 through 4–30 was inadvertently omitted from the listing of applicable directives in *United States v. Cottle, supra*. What the majority fails to address is the fact that while "Section G" sets forth the *internal* operations of the Air Force drug rehabilitation program, it does not address the confidentiality of these op-

---

1. See specifically Part II, Drug and Alcohol Abuse Control Programs, Chapter 4, Drug Abuse Control Program, Section G, Rehabilitation of Identified Drug Abusers, paragraph 4–25, Drug Abuse Rehabilitation, thereof.

2. Namely: Section C, Responsibilities Assigned, paragraph 4–8, Installation Commanders; Section G, Rehabilitation of Identified Drug Abusers, paragraph 4–25, Drug Abuse Rehabilitation, subparagraph b, Rehabilitation

Committee; and Figure 4–6, Administration of Drug and Alcohol Abuse Documentation, paragraph II, Access to Drug or Alcohol Abuse Control Case of Treatment Files, subparagraph a, Authorized Access.

3. AFR 30–2, Part II, Chapter 4, Section G, paragraphs 4–25—4–30.

4. AFR 30–2, Part II, Chapter 4, Figure 4–6.

erations that have been super-imposed upon that program by AFR 30–2, Figure 4–6; 42 C.F.R. §§ 2.1—2.67–1; and AFM 111–1, paragraph 5–14.

The majority wanders astray even further when it asserts that the installation commander's responsibility for appropriate disposition of personnel involved in other facets of the Air Force's overall drug abuse program (AFR 30–2, Part II, Chapter 4, Section C, paragraph 4–8c), extends to his knowingly violating the confidential and privileged aspects of the drug rehabilitation program, established as a separate facet of that program.

What is agonizingly apparent from the lead opinion, is its misinterpretation of the basic premises of *United States v. Cottle, supra.* Hopefully, a re-examination of the pertinent Air Force regulations that incorporate and superimpose the federal rules of confidentiality of drug abuse rehabilitation programs as contained in 42 C.F.R. §§ 2.1—2.67–1 upon the Air Force drug rehabilitation program will clarify this Court's original position in that case.

·Looking first to AFR 30–2, we find Part Two establishes what is called the Drug and Alcohol Abuse Control Program. Its chapter 4, entitled Drug Abuse Control Program, consists of a multi-faceted effort to bring Air Force drug abuse under "command control." According to this chapter's first paragraph, the chapter is designed to prevent drug abuse among Air Force members; identify, treat, and restore drug abusers to duty when feasible; control duty assignments, and discipline those who use or promote the illegal or improper use of drugs. Paragraph 4–1.2 states the chapter's goal is (1) to discourage all drug abuse, and (2) to reduce to a minimum the adverse consequences to the Air Force and the individual when abuse does occur.

Chapter 4, Sections: A, General Provisions; B, Prohibitions and Penalties; C, Responsibilities Assigned; H, Management of Persons Involved in Drug Abuse; and I, Program Data and Reporting, all deal generally with managerial responsibilities and procedures necessary for accomplishing the objectives of the overall Drug Abuse Control Program. The remaining sections set out various specific subprograms aimed at achieving the Chapter's overall goals. Section D sets forth standards for personnel procurement and retention, requiring that separation actions be initiated with regard to certain types of offenders. Section E establishes a drug education program designed to minimize future drug abuse through personal awareness. At Section F, an elaborate scheme is provided for identifying personnel that abuse drugs. Included in the scheme are: investigations, apprehension, or arrest; random urine testing; urinalysis; a limited privileged communication program; and procedures for handling evidence of drug abuse developed during routine medical treatment. Finally, Section G establishes procedures for treatment of identified drug abusers, that are offered, and voluntarily accept such treatment. This section is entitled the Air Force Drug Rehabilitation Program.

The bold new experiment introduced by the Air Force Drug Abuse Control Program, however, is not contained in any section of Chapter 4; rather, it is attached to that chapter as Figure 4–6. It is this one-page document that, for the first time in a military setting, incorporates and superimposes the federal rules concerning confidentiality of drug abuse rehabilitation programs upon the Air Force Rehabilitation Program created by Chapter 4, Section G of the regulation.

In my opinion, the framers of AFR 30–2 manifestly intended that all interpretations of its language be consistent with the extraordinarily broad confidentiality provisions of 42 CFR §§ 2.1—2.67–1.

Certainly, the provisions of the remaining Air Force Regulation on the subject support this view:

Section 408 of the Drug-Abuse Office and Treatment Act of 1972 (21 U.S.C. 1175) results in special rules which limit the use of records of "the identity, diagnosis, prognosis, or treatment" of drug abusers under the federal drug-abuse prevention program.

\*    \*    \*    \*    \*    \*

... the Air Force has adopted the standards of the statute and the SAO regulations, with the limited exceptions in AFR 30–2, figure 4–6, para 2a, as a matter of Air Force policy.

b. The statute permits the disclosure of drug-abuse records, with written consent of the patient, "to governmental personnel for the purpose of obtaining *benefits* to which the patient is entitled." 21 U.S.C. 1175(b)(1)(B). This includes the "benefit" of use in court-martial defense. More specifically, the statute and applicable regulations permit the disclosure of these records, *at the request of* and *with the written consent of the accused/patient*:

(1) As evidence for the defense before findings.

(2) As evidence in mitigation or extenuation in presentencing procedures.

(3) *After trial* in support of *clemency interviews* (para 7–5) or petitions for *clemency action* by the Judge Advocate General or the Secretary of the Air Force (Ch 12).

c. The following procedure should be observed:

(1) *The accused's consent to disclosure should be in the form stated in 21 C.F.R. 1401.21 and must be signed.*

(2) *The extent of the disclosure should be no more than necessary to the purpose under b above.*

\*     \*     \*     \*     \*     \*

(3) Drug-abuse records should not be discussed in open, public session.

(4) All parties should be instructed regarding the confidentiality of these records, including the patient's identification. Discussion of them should not be allowed outside court-martial channels, 21 C.F.R. 1401.23(d).

(5) *Records introduced,* and transcripts of testimony relating to them *should be controlled as "Sensitive Data"* under AFR 30–2, figure 4–6.

(6) The standards of AFR 30–2, figure 4–6, and the SAO regulations apply to "communications and other identification relating to the patient's identity, diagnosis, prognosis or treatment" as well as tangible "records" of the information. (21 C.F.R. 1401.01(h) and SAO comments in 38 Fed.Reg. 33744) Thus the procedures and safeguards above apply to nondocumentary evidence, such as testimony of a physician or other witness ... [emphasis added]

AFM 111–1, Military Justice Guide, paragraph 5–14.[5]

Having enunciated the reasons for my disagreement with the majority's rationale, and reasserted my understanding of the principles enunciated by this Court in *United States v. Cottle, supra,* I now begin applying these principles to the facts of the instant case.

If, as the military judge's ruling indicated, drug rehabilitation information was inadmissible as a result of this Court's ruling in *United States v. Cruzado-Rodriguez, supra,* the comments of the accused's commander should not have been made available to the convening authority or supervisory authority for their consideration with regard to clemency matters. I say this because (a) the commander, as a member of the accused's rehabilitation committee,[6] is expressly prohibited by regulation from disclosing in "criminal proceedings" any information concerning, or gained as a result of, the accused's participation in a drug rehabilitation program unless the accused affirmatively waives such disclosure in writing,[7] and, (b) I view reports of clemency evaluation, provided to reviewing authori-

---

**5.** The cited regulations of the Special Action Office contained in the quoted paragraph of this manual, now fall under the purview of Public Health. They have been renumbered and now are contained in Public Health Service, Confidentiality of Alcohol and Drug Abuse Patent Records, 42 Code of Federal Regulations §§ 2.1—2.67–1 (1978). 21 C.F.R.

1401.21 is now at 42 C.F.R. 2.31; 21 C.F.R. 1401.23(d) is at 42 C.F.R. 2.40; and 21 C.F.R. 1401.01(h) is at 42 C.F.R. 2.12(b)(3).

**6.** AFR 30–2, paragraph 4–25b.

**7.** AFR 30–2, Figure 4–6, paragraph I; AFM 111–1, paragraph 5–14b; and 42 C.F.R. § 2.31.

ties for their individual consideration in reviewing court-martial proceedings for clemency, as a part of "criminal proceedings" against the accused,[8] whether handed without comment to a convening authority, or attached without comment to the Review of the Staff Judge Advocate provided the supervisory authority.

The fact that the accused and his counsel, while availing themselves of an opportunity to comment on evaluation reports, failed to object to the commander's failure to comply with regulations specifically prohibiting him from divulging the information without an affirmative waiver in writing, does not permit the reviewing authority to consider information in violation of the extraordinarily broad exclusionary privilege recognized by this court in *United States v. Cottle, supra.* To the contrary, according to Air Force regulatory provisions, comments of the accused's commander concerning the accused's participation in an Air Force drug rehabilitation program cannot be considered by the convening authority or supervisory authority, in deciding whether or not to exercise their clemency powers under the Manual for Courts-Martial, 1969 (Rev.), paragraph 88, unless the accused in writing affirmatively waives his right against such disclosure.[9]

As indicated above, I agree with the following recent assertion of the Navy Court in *United States v. Roland,* 5 M.J. 935 (N.C. M.R.1978):

The law is well established that, in determining whether to exercise his power to mitigate the sentence, the convening authority may consider matter from the accused's service record which would not have been admissible for sentence at trial.

Where, however, as here, a regulatory privilege specifically prohibits divulgence of information in "criminal proceedings," that information is not a proper subject for such consideration.

Before I conclude, however, that the convening and supervisory authorities' consideration of this matter in violation of regulatory privilege constituted error, I am compelled to address the current validity of the regulations creating this "bold new experiment" in light of the new chapter on evidence in the Manual, *supra.*

Mil.R.Evid. 501(a) reads:

## GENERAL RULE

(a) A person may not claim a privilege with respect to any matter except as required by or provided for in:

(1) The Constitution of the United States as applied to members of the armed forces;

(2) An act of Congress applicable to trials by courts-martial;

(3) These rules or this Manual; or

(4) The principles of common law generally recognized in the trial of criminal cases in the United States district court pursuant to rule 501 of the Federal Rule of Evidence insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the Uniform Code of Military Justice, these rules, or this Manual.

When a regulation promulgated by one of the Armed Forces directly conflicts with a

---

**8.** AFM 111–1, paragraph 5–14b(3) and 42 C.F.R. § 2.13(a). Also see *generally,* 42 C.F.R. § 2.39.

**9.** As pointed out in the majority opinion, this court has consistently held that the failure of an accused and his counsel to avail themselves of an opportunity to object to comments contained in the review of the staff judge advocate via a *Goode* response, constitutes a waiver of errors contained therein. We also, consistent with MCM provisions of paragraph 85b, have held that evidence from outside the record may be provided to review authorities, so long as the accused has an opportunity to rebut or explain the matter, and that failure to object to the validity of matters contained therein, via a *Goode* response, constitutes a waiver of the inclusion of such matters. However, we have not before held, that a reviewing authority may consider evidence from outside the record which may be considered only in direct violation of a specific regulatory right of the accused, requiring an affirmative waiver of that right in writing.

Manual provision implemented by Executive Order, the conflicting provisions of that regulation are invalid.[10]  Therefore, according to a literal reading of Rule 501(a), unless a privilege created by Air Force Regulation falls within one of its four subparagraphs, it may not be claimed in a court-martial.  If it can not be claimed in a court-martial, the entire privilege concerning drug rehabilitation information, extended by Air Force Regulation to "criminal proceedings," becomes a nullity because the information "privileged" with regard to the remainder of the "court proceedings" would actually be contained in the trial transcript itself.  Since, I glean from a prosecution exhibit rejected by the military judge, that in the case before us, the privilege was granted to the accused on or about 31 October 1980, a month after the effective date of Rule 501(a), its effect upon the result here becomes of immediate concern.

It is clear that the instant regulatory privilege is neither provided for in the Constitution, Rule 501(a)(1), nor elsewhere in the rules or Manual, Rule 501(a)(3), nor is it derived from principles of common law, Rule 501(a)(4).  And, although as noted above, the basis of this extraordinarily broad privilege stems from the Air Force's adoption in AFR 30–2, and AFM 111–1, paragraphs 5–14, of Public Health Service regulations implementing the Drug Abuse Office and Treatment Act of 1972, I here note that the provisions of that Act provide:

> The prohibitions of this section do not apply to any interchange of records—(1) within the Armed Forces or within those components of the Veterans' Administration furnishing health care to veterans, or (2) between such components and the Armed Forces.

The regulatory privilege is not, therefore, provided for by statute under Rule 501(a)(2).

Having concluded that none of the subparagraphs of evidentiary Rule 501(a) provide for the privilege herein addressed, I turn now to the question of whether this Court may be "required" by any of the provisions of these subparagraphs to honor this privilege.

While recognizing that regulatorily promising an individual a privilege as to certain matters amounts to giving him a valid grant of immunity, and a promise, under certain circumstances, contrary to Article 31, U.C.M.J., 10 U.S.C. § 831, and the 5th Amendment of the United States Constitution, I would prefer not resting my conclusions in this case on these grounds.  Thus any misinterpretation of my position that might erroneously conclude that I view the Armed Forces as free to regulatorily circumvent the intent of an Executive Order, is avoided.  To the contrary, I believe the intent of the rule as expressed in its analysis contained at 8 M.J. CLVIII is quite clear:

> Section V contains all of the privileges applicable to military criminal law except for those privileges which are found within Rule 301 . . . Rule 302 . . . and Rule 303 . . .
>
> \*    \*    \*    \*    \*    \*
>
> The Committee deemed the approach taken by Congress in the Federal Rules impracticable within the armed forces.  Unlike the Article III court system, which is conducted almost entirely by attorneys functioning in conjunction with permanent courts in fixed locations, the military criminal legal system is characterized by its dependence upon large numbers of laymen, temporary courts, and inherent geographical and personnel instability due to the worldwide employment of military personnel.  Consequently, military law requires far more stability than civilian law.  This is particularly true because of the significant number of non-lawyers involved in the military criminal legal systems.  Commanders, convening authorities, non-lawyer investigating officers, summary court-martial officers, or law enforcement personnel need specific guidance as to what material is privileged and what is not . . .
>
> \*    \*    \*    \*    \*    \*

---

10.  See generally, *United States v. Voorhees*, 4 U.S.C.M.A. 509, 16 C.M.R. 83 (1954).

Accordingly, I would hold that, absent extraordinary factors, Rule 501(a) prohibits a claim of any privilege at courts-martial other than those contained in Section V of the Military Rules 301, 302, and 303.

In the case before us, however, I conclude that such extraordinary factors do exist. Turning to Rule 102, I note that, although its analysis points out that it is "not a license to disregard the Rules in order to reach a desired result," the Rule itself, reads:

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

In view of Rule 102, I do not believe Rule 501(a) precludes an individual from claiming a privilege regarding matter that he disclosed prior to 1 September 1980, pursuant to a valid privilege existing at the time of that disclosure. Such a construction would clearly not secure fairness in administration of the law of evidence to the end that proceedings be justly determined. Likewise, I do not construe Rule 501(a) as precluding, after 1 September 1980, an individual from claiming a privilege regarding matter that he disclosed pursuant to an invalid privilege, which, based upon uncontroverted assertion of Air Force officials and Air Force regulations, he believed to be valid. Again, such a construction would fail to secure the stated purpose of the Evidentiary Rules. Since the facts of the instant case fall squarely into this latter category, I would hold that here, even though the accused was expressly precluded by Rule 501(a) from claiming a privilege with regard to matters he divulged pursuant to an invalid regulatory privilege, the Government is estopped from considering those matters because of a combination of the following extraordinary factors:

(1) The failure of any agency within the Air Force to affirmatively tell any of its personnel that privileges purportedly granted pursuant to its regulations, are valid only insofar as they do not conflict with the provisions of Evidentiary Rule 501(a);

(2) The failure of the Air Force to purge its regulations of such invalid regulatory privileges;

(3) The purpose of the Military Rule of Evidence as stated in Rule of Evidence 102; and

(4) The implications of possible Constitutional and statutory requirements to honor such commitments on the part of the Air Force, despite their invalidity on other grounds.

Additionally, in an effort to further secure the fairness in the administration of Evidentiary Rule 501(a), contemplated by Evidentiary Rule 102, I would hold that effective *30 days from the date of this decision*, the factors set out in such a holding would no longer be deemed by this Court so extraordinary as to justify a claim of privilege at trial based on Air Force regulations, henceforth clearly invalidated by proposed holdings found elsewhere in this dissent, or promises by Air Force officials made pursuant thereto.

Having determined in the instant case, that the convening and supervisory authorities were improperly provided with information to assist them in determining whether the exercise of clemency powers in this case was appropriate, I would conclude that such information, consisting of continued use of illicit drugs after having been placed on a drug rehabilitation program, was prejudicial to the substantial rights of the accused. After carefully examining all other materials properly examined by these authorities, however, it appears to me, especially in light of the accused's conviction on three separate larceny offenses involving theft on duty, loading and off-loading the aircraft's passenger luggage which he stole, that such prejudice was minimal.

Nevertheless, in the interest of judicial and administrative economy, I would reassess the sentence.