## UNITED STATES

v.

**Airman First Class David J. LANGE, FR 390–64–1061 United States Air Force.**

ACM 23076.

U. S. Air Force Court of Military Review.

Sentence Adjudged 21 Jan. 1981.

Decided 29 July 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain J. Laurens Tullock.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before ARROWOOD, MAHONEY and MILLER, Appellate Military Judges.

### DECISION

PER CURIAM:

The accused and a companion, Airman Brace, were on authorized leave at Big Bend National Park, a federal enclave in the State of Texas, located several hundred miles from their duty station. In a remote area of that park they were arrested by park rangers and United States Customs agents for use of marijuana and for bringing marijuana across the border from Mexico.[1] The United States Attorney for the Western District of Texas declined to prosecute.[2] Tried by general court-martial, the accused stands convicted of use of marijuana, and possession of marijuana with intent to distribute, both in violation of Article 134, Uniform Code of Military Justice. We hold the exercise of court-martial jurisdiction was appropriate.

---

1. Airman Brace's conviction has been affirmed by another panel of this Court. *United States v. Brace*, 11 M.J. 794 (A.F.C.M.R. 1981).

2. In a letter to the base staff judge advocate, the United States Attorney indicated that possession of five pounds of marijuana was not within the guidelines for prosecution by his office. Perhaps the possession with intent to distribute offense could have been prosecuted in a state court under the long-arm statute,

Texas Penal Code, Section 1.04, but there is no indication in the record that Texas authorities ever expressed an inclination to do so. Thus, if there was a military interest in the offenses, it could not be vindicated adequately in the civilian courts. *See, Schlesinger v. Councilman*, 420 U.S. 738, 767; 95 S.Ct. 1300, 1314; 43 L.Ed.2d 591 (1975). Also *see, United States v. Decoster*, 11 M.J. 775 (A.F.C.M.R. 1981).

As to the five pounds of marijuana possessed with intent to distribute, there is clear evidence that the accused intended to bring it with him at the end of his leave, to the area of his base, Laughlin Air Force Base, Texas. Extensive discussion is not necessary for us to conclude that the record clearly bears out the observation that "almost every involvement of service personnel with the commerce in drugs is 'service connected.'" *United States v. Trottier*, 9 M.J. 337, 350 (C.M.A. 1980).

As an exception to that general observation, the defense points out its limits as noted by Chief Judge Everett of the Court of Military Appeals:

> [I]t would not appear that use of marijuana by a serviceperson on a lengthy period of leave away from the military community would have such an effect on the military as to warrant the invocation of a claim of special interest and significance adequate to support court-martial jurisdiction under *O'Callahan*.

*United States v. Trottier, supra*, note 28. At first blush, the accused's use of marijuana on a six-day authorized absence in the wilds of Big Bend National Park would appear to fit squarely within the exception described by Chief Judge Everett. However, the trial counsel below, following the suggestion of Judge Fletcher of the Court of Military Appeals, called the accused's commander as a witness to relate the military impact of that instance of drug abuse.[3] The commander's testimony makes it clear that the accused's use of marijuana had a direct, palpable, and adverse impact upon the mission of his unit and the mission of the installation.

The accused's unit was the 2108th Communications Squadron. The mission of the squadron was to provide air traffic control services, and operation and maintenance of all communications for the base, and the flying training wing. The equipment for which the squadron was responsible included navigation aids, radar, radios, telephones, and wire communication. Due to the installation's mission to train pilots, Laughlin Air Force Base has the second largest radar approach control in the United States Air Force.

The accused was trained as an air traffic control radar repairman. The commander characterized the proper maintenance of the electronic navigational aids as not only essential to the mission, but also of "life or death" significance. On his arrival from technical training school, the accused was above average in his duty knowledge and skills. Unfortunately, however, his performance deteriorated and disciplinary problems developed. In July 1980, the accused was punished pursuant to Article 15, Uniform Code of Military Justice, for possession of marijuana. That incident necessitated his removal from his primary duties, and entry into the drug rehabilitation program. While the accused was out of his specialty, other squadron members, and a repairman brought in on temporary duty from another base, were required to perform his duties.

■ Prior to the accused's use of marijuana at Big Bend National Park, on 1 September 1980, he had made significant apparent progress in the drug rehabilitation program. Due to a critical shortage in the accused's specialty, the chief of maintenance had requested, and the commander had approved, carefully supervised re-entry of the accused into his radar repair duties. As a result of that incident, however, the commander concluded that the accused was irresponsible, and could not be trusted to perform maintenance on expensive mission-essential navigational equipment.[4]

---

3. See Judge Fletcher's separate opinions in *United States v. Trottier*, 9 M.J. 337, 353 (C.M.A. 1980), and *United States v. Norman*, 9 M.J. 355, 357 (C.M.A. 1980).

4. As pointed out by the commander's testimony, the accused's misconduct cannot be viewed in isolation. As an isolated case, the accused's drug abuse might have had a relatively minor impact upon squadron morale, discipline and mission effectiveness. However, in this case, the accused's offenses followed by less than two weeks the apprehension and identification of several other squadron members for illegal involvement with marijuana. The cumulative impact of such incidents of drug abuse is a

As a consequence of the foregoing, we conclude that the accused's usage of marijuana, albeit on leave, in a remote location, distant from the base, directly degraded the mission capability of his military unit. The offense was, in short, "service connected," *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Military interest in deterring such offenses is clearly "distinct from and greater than that of civilian society." *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

Accordingly, we find the exercise of court-martial jurisdiction was appropriate.[5] The remaining assigned error is without merit. The approved findings of guilty and sentence are correct in fact and law, and based upon the entire record, are

AFFIRMED.

MILLER, Judge (concurring in result):

The only difference between the jurisdictional facts of the instant case and those of its companion, *United States v. Brace*, 11 M.J. 794, (A.F.C.M.R. 1981), is that here, in addition to the facts of *Brace*, evidence was admitted which established that the accused was at the time of the alleged offense a participant in a base drug rehabilitation program.

In my opinion, admission of evidence concerning the accused's participation in such a drug rehabilitation program constituted clear error.[1] Nevertheless, the rationale expressed in *United States v. Brace, supra*, convinces me that, even without reference

to the erroneously admitted evidence, ample facts remain which clearly establish jurisdiction. *Ergo*, the error was not prejudicial. I concur in the result.

Nevertheless, before closing, I am constrained to review and further comment upon what I regard as my brethren's continuing misinterpretations of Air Force Regulation 30–2, Social Actions Program, 8 September 1976, Air Force Manual 111–1, Military Justice Guide, 25 August 1975, and Public Health Service, Confidentiality of Alcohol and Drug Abuse Patient Records, 42 C.F.R. §§ 2.1–2.67–1 (1978).

On 21 April 1981 this Court in its first interpretation of these three regulations, stated:

> Read conjunctively, the general effect of these regulations is to prohibit anyone, other than the accused, from introducing, in criminal proceedings, any information about, or gained as a result of, his participation in an Air Force drug rehabilitation program. The result, then, is an extraordinarily broad evidentiary exclusionary privilege that is automatically invoked on behalf of the accused, unless he specifically directs otherwise. [Footnotes omitted]

*United States v. Cottle*, 11 M.J. 572, 574 (A.F.C.M.R. 1981).

Less than three months later, Senior Judge Arrowood and Judge Mahoney, speaking for the Court, limited *Cottle's* general holding by ruling in *United States v. Schmenk*, 11 M.J. 801 (A.F.C.M.R. 1981) and *United States v. Schrock*, 11 M.J. 797 (A.F.C.M.R. 1981) that drug rehabilitation information could properly be considered by

---

legitimate factor for courts-martial to consider in assessing "service connection."

**5.** We acknowledge the concern of our concurring brother that today's decision condones consideration at trial of the accused's participation in the drug rehabilitation program. We have clearly held that such information normally may not be considered in determining the accused's guilt, or in imposing sentence. *United States v. Cruzado-Rodriguez*, 9 M.J. 908 (A.F.C.M.R. 1980); *United States v. Cottle*, 11 M.J. 572 (A.F.C.M.R. 1981). Here, however, the references to drug rehabilitation efforts were not considered in determining guilt or

sentence. Indeed, it was never brought to the attention of the court members. It was considered only by the military judge, and solely for the limited purpose, Mil.R.Evid. 105, of determining whether the court-martial could constitutionally exercise its jurisdiction over the offenses. We hold that such reference to and consideration of the drug rehabilitation efforts were a permissible exercise of the trial court's inherent power to entertain and rule upon challenges to its jurisdiction. Article 39(a)(2), Uniform Code of Military Justice.

**1.** *United States v. Cottle*, 11 M.J. 572 (A.F.C. M.R. 1981).

post-trial review authorities when exercising their clemency function, with or without the consent of the accused.

On 21 July 1981, the same majority further limited *Cottle, supra*, this time ruling that prior to referral of charges, the convening authority may consider drug rehabilitation information for the purpose of determining whether to refer such charges to trial. *United States v. Jones*, 11 M.J. 817 (A.F.C.M.R. 1981).

Here, my brothers say the regulations permit the introduction of drug rehabilitation material at trial, itself, so long as it is not presented to the triers of fact for use in directly determining the guilt or innocence of the accused.

Not only does such a ruling misinterpret the combined effect of AFR 30–2, AFM 111–1, and 42 C.F.R. §§ 2.1–2.67–1, for the reasons stated in *United States v. Cottle, supra*, and my dissents in *Schmenk, supra*, and *Jones, supra*,[2] but it effectively overrules one specific holding of *Cottle*, to wit:

> Consequently, no information resulting from or concerning an individual's participation in an Air Force drug rehabilitation program is admissible at Air Force courts-martial unless a specific basis for its admission is first shown to be in compliance with the cited regulatory provision. [Footnotes omitted]

*United States v. Cottle, supra*, at 574.

In my opinion, my brethren have today subtly crossed the line from colorable interpretative arguments centering on the meaning of the regulatory term "criminal proceedings" to a judicial invalidation of perfectly clear regulatory provisions. Because the underlying purpose of these regulations is the protection of the personal interests of airmen volunteering to participate in the Air Force's drug rehabilitation program, the government should have been required to abide by its own regulations.

**2.** Actually, the prohibitions of these regulations not only clearly prohibit information pertaining to an accused's participation in a drug rehabilitation program from being admitted at his court-martial, but they also provide strict confidentiality prohibiting disclosure outside the

*United States v. Russo*, 1 M.J. 134 (C.M.A. 1975).

**UNITED STATES**

court room. In effect, the Air Force tells its airmen, if you volunteer for our drug rehabilitation program, we pledge we will never disclose any facts regarding your participation in it to anyone, unless you personally request it in writing.