UNITED STATES

v.

Airman First Class Tahir M. MALIK, FR 351–62–2873, United States Air Force.

ACM 25454.

U.S. Air Force Court of Military Review.

Sentence Adjudged 2 May 1986.

Decided 15 Oct. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Deborah A. Baker.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Robert E. Giovagnoni.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

STEWART, Judge:

The accused, contrary to his pleas, was convicted of wrongfully possessing one ounce of cocaine with intent to distribute, wrongfully using cocaine, conspiring to possess cocaine with intent to distribute, and unlawfully carrying a concealed .38 caliber pistol on his person, all occurring in the city of Homestead, Florida, on 21 January 1986. The general court-martial adjudged and the convening authority approved, a sentence to dishonorable discharge, confinement for three years, total forfeitures, and reduction to airman basic.

The defense assigns as error that the court-martial lacked subject matter jurisdiction of the charges and specifications. We disagree.

The accused was assigned to MacDill Air Force Base, Florida. He had an arthritic condition for which he had met a medical board with a view to medical separation from the Air Force. That board, with one member dissenting, found he was not disqualified for military service. Nevertheless, he was placed on convalescent leave, pending further medical evaluation, at the end of November 1985 and was to report back to the MacDill Air Force Base on 16 February 1986. While on convalescent leave he lived with a friend who was a former Air Force member, Hernandez, in Tampa, Florida. Tampa is the city adjacent to MacDill Air Force Base.

Hernandez and the accused made arrangements by telephone with Hernandez's friend, Garcia, also a former Air Force member, to go to the Miami, Florida area to buy cocaine from contacts to be produced by Garcia. Garcia, however, who had also known the accused at MacDill Air Force Base, contacted the Air Force Office of Special Investigations (OSI) at Homestead Air Force Base, Florida, and a "sting" operation, participated in by both OSI special agents and civilian police, was planned.

On the night of 21 January 1986 the accused and Hernandez met Garcia at the airport in the Miami vicinity. At the accused's and Hernandez's insistence, the three drove to Garcia's apartment to pick up the latter's .38 caliber pistol. Next they drove to a motel in the city of Homestead where they were to meet Garcia's contacts. They entered the bar of the motel, with the accused carrying the loaded pistol in his waistband under his jacket. They met the contacts, an OSI special agent and a civilian policeman, and commenced negotiations for the purchase of one ounce of cocaine. Hernandez referred to the accused as his protection and his partner. While initially the accused was silent, he later actively engaged in the negotiations. Among other things, the accused asked the contacts how much a kilo of cocaine would cost. Hernandez stated they would take the ounce back to Tampa to show their buyers. The accused also told the contacts he and Hernandez would return in three weeks and buy three more ounces of cocaine for $2,200.00.

Finally, the price for the ounce was agreed upon at $900.00 and the money was exchanged. The cocaine was transferred to the accused and Hernandez. The accused tested it by placing his finger in the cocaine, placing his finger in his mouth, and then inserting his finger up his nose. When accused was apprehended, the loaded pistol was found in his waistband. The civilian police turned the accused over to the OSI for disposition and evinced no interest in prosecuting him.

Almost every involvement of service personnel with the commerce in drugs is service connected for subject matter jurisdictional purposes. *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980). Only under unusual circumstances does drug abuse by a serviceperson not have a major and direct outward impact on the military. For in-

stance, it would not appear that use of marijuana by a serviceperson on a lengthy period of leave away from the military community would have such an effect on the military as to warrant the invocation of a claim of special military interest and significance adequate to support court-martial jurisdiction. Similarly, the interest of the military in the sale of a small amount of a contraband substance by a military person to a civilian for the latter's personal use seems attenuated. *United States v. Trottier, supra*, at 350, note 28.

■ The lengthy period of leave away from the military community exception has been qualified. Even though the serviceperson is on extended leave when he uses marijuana, the use is service connected if he later enters a military installation while subject to any physiological or psychological effects of the drug. *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983). The type of drug used is significant. Thus, the use of half an ounce of cocaine, a habit forming narcotic drug, during a forty day leave away from any military community, supported court-martial jurisdiction. *United States v. Hemenway*, 19 M.J. 955 (A.F.C.M. R.1985). Similarly, the purchase of drugs for the purpose of resale in the military community is service connected. *United States v. Lange*, 11 M.J. 884 (A.F.C.M.R. 1981).

■ Here, the trial judge found, *inter alia*, that the possession of the cocaine and the conspiracy to possess the cocaine were committed with the intent to distribute the cocaine in areas near MacDill Air Force Base. Further, likely purchasers of the cocaine would include other military members in that community, and the cocaine was likely to be used on or near a military installation. These findings are supported by the evidence and in themselves establish the service connection requisite for military jurisdiction.

As we interpret *Trottier* and the pertinent case law, there is court-martial jurisdiction over a serviceperson's drug offenses except under unusual circumstances. We find no such unusual circumstances here. The arrangements began near MacDill Air Force Base, the purchase and possession of the ounce of cocaine occurred near Homestead Air Force Base, and the accused intended to sell cocaine in the military community. Nor are we persuaded by the accused's argument that his case is similar to *United States v. Barideaux*, 22 M.J. 60 (C.M.A.1986). Barideaux was on terminal leave when he distributed marijuana. Terminal leave is a unique status where no further military duties are contemplated and the mere passage of a finite period of time will completely sever active military service. It is a distinctly different status than convalescent leave pending further medical evaluation, particularly where a medical board had already found the accused not medically disqualified for further service.

■ For the above reasons we believe the trial judge was correct in finding subject matter jurisdiction over the drug offenses. Because the concealed weapon offense was so closely interwoven with the drug offenses, he was also correct in finding jurisdiction over that offense. *United States v. Campbell*, 16 M.J. 886 (A.F.C.M. R.1983); *United States v. Havens*, 16 M.J. 553 (A.F.C.M.R.1983).

We have examined the record of trial, the assignment of errors, the government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge SESSOMS and Judge LEWIS concur.